# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MAMUR NASIMOV,** | : | **CIVIL ACTION** |
| *Petitioner,* | : | |
| | : | **NO. 25-7420** |
| **v.** | : | |
| | : | |
| **JAMAL L. JAMISON,** *Warden of* | : | |
| *Philadelphia Detention Center, et al.,* | :: | |
| *Respondents.* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                    JANUARY 13, 2026

## MEMORANDUM OPINION

**INTRODUCTION**

Before this Court is Petitioner Mamur Nasimov's ("Mr. Nasimov" or "Petitioner"), petition

for a writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2241 (the "Petition"), which challenges

his detention by the Department of Homeland Security ("DHS").  (ECF 1).  In the Petition, Mr.

Nasimov, a native and citizen of Uzbekistan who has alleged that he has been in the United States

since February 2023,[1] and further contends that he is charged, *inter alia*, with entering the United

States of America without admission or inspection and is being unlawfully detained and should be

released.  (*Id.*).  Mr. Nasimov does not contend he entered the United States with pre-authorization.

Rather, the dispute is over whether Mr. Nasimov may have a bond hearing before an Immigration

Law Judge ("IJ") or is properly subject to detention pending removal.  Respondents,[2] (hereinafter,

---

[1]    For purposes of this Petition the Government has agreed that the factual allegations in the Petition
may be taken as true.  (ECF 4, at p. 3) (the Government representing that "For the purposes of responding
to this *habeas* petition only, the [G]overnment does not dispute other facts or characterizations thereof
stated in the [P]etition except if the [P]etitioner claims he has been 'admitted' to the United States.).

[2]    Respondents will be addressed collectively as the "Government."  For the record, the named
Respondents are David O'Neil, in his official capacity as Field Office Director of Enforcement and
Removal Operations, Philadelphia Field Office, Immigration and Customs Enforcement, Kristi Noem, in
official capacity as the Secretary of the United States Department of Homeland Security, Pamela Bondi, in

the "Government"), argue that this Court lacks jurisdiction to grant the relief sought — *i.e.*, release

from custody pending a decision on Petitioner's immigration status — or otherwise intervene in

Petitioner's removal proceedings. (ECF 4). In the alternative, the Government argues that the

Petition should be dismissed on the merits because Petitioner is being lawfully detained pursuant

to 8 U.S.C. § 1225(b)(2) and, as such, his detainment without a bond hearing before an IJ does not

offend due process. (ECF 4). The issues have been fully briefed and are ripe for disposition. For

the reasons set forth herein, Mr. Nasimov's *habeas corpus* Petition is granted, *in part*.[3]

## FACTUAL BACKGROUND

The following facts are undisputed[4] and are gleaned from the Petition:

Mr. Nasimov is a native and citizen of Uzbekistan who arrived in the United States via the United States-Mexico border on or around February 1, 2023, (ECF 1 at ¶ 2), and has since resided in the United States. (*See id.* at ¶ 3). Upon his entry, Mr. Nasimov was apprehended by the United States Customs and Border Control ("CBP") in San Ysidro, California. (*Id.*). The United States Department of Homeland Security ("DHS") released Mr. Nasimov on an Order of Release and Recognizance, issued him a Notice to Appear, and placed him in removal proceedings. (*Id.*). Thereafter, Mr. Nasimov timely filed a Form I-589 Application for Asylum, which remains pending. (*Id.*).

Mr. Nasimov was arrested by Immigration and Customs Enforcement ("ICE") during a routine check-in with immigration officials at the Philadelphia ICE/Enforcement and Removal Operations office on December 30, 2025. (*Id.* ¶ 4). Since his arrest, Petitioner has remained in the Government's custody and is physically located at the Philadelphia Federal Detention Center ("FDC"), at 700 Arch Street, Philadelphia, Pennsylvania 19106. (*Id.* at ¶¶ 41-44).

---

her official capacity as the Attorney General of the United States, and Jamal L. Jamison, in his official capacity as warden of the Philadelphia Federal Detention Center.

[3]     This Court recognizes that it is not alone in deciding this case as it does. As of January 5, 2026, more than "308 judges have ruled against the [Government's] mass detention policy — ordering release or bond hearings in more than 1,600 cases — [while] just 14 judges . . . have sided with the [Government's] position." Kyle Cheney, *Hundreds of judges reject Trump's mandatory detention policy, with no end in sight*, Politico (Jan. 5, 2026), www.politico.com/news/2026/01/05/trump-administration-immigrants-mandatory-detention-00709494.

[4]     *See supra* footnote 1.

Prior to or since his arrest and detainment, this Court is unaware of any representation by DHS, or any of its sub-agencies, that Mr. Nasimov is a danger to persons or property or is a flight risk. (*See id.* at ¶ 60) (*see generally* ECF 4). Mr. Nasimov has not yet been provided a bond hearing to assess such issues or provided any other individual assessment to support his detainment. On December 31, 2025, Mr. Nasimov filed the Petition alleging his detainment was unlawful. (ECF 1). Responding to this Court's Order, (ECF 2), on January 5, 2026, the Government filed a response to the Petition, (ECF 4). On January 6, 2026, Petitioner filed a reply in support of the Petition. (ECF 5).[5]

## LEGAL STANDARD

A writ of *habeas corpus* is a mechanism by which someone who is held unlawfully in the custody of a government may challenge the legality of his or her detention. This right to challenge one's unlawful detention is due to every person within the United States, guaranteed by the United States Constitution. *See* U.S. Const. Art. I, § 9 cl. 2.[6] A federal district court is authorized to grant a writ of *habeas corpus* under 28 U.S.C. § 2241 when the petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution and/or laws or treaties of the United States." 28 U.S.C. §§ 2241(c)(1), (3). The burden is on the petitioner to show that his detention/custody is in violation of the Constitution and/or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941). The Fifth Amendment of the United States Constitution entitles noncitizens[7] to due process of law in deportation proceedings. *See Serrano-*

---

[5]    While a reply is not allowed by right under this Court's Local Rules, *see* L. Civ. R. 7.1, and though leave to file the reply was not requested or granted in this matter, this Court nonetheless considers Petitioner's reply.

[6]    The United States Supreme Court has held that the writ of *habeas corpus* may only be suspended by a "clear and unambiguous statement of congressional intent." *I.N.S. v. St. Cyr*, 533 U.S. 289, 305 (2001), *superseded on other grounds by Nasrallah v. Barr*, 590 U.S. 573 (2020).

[7]    While the Immigration and Nationality Act ("INA") uses the term "alien" to describe individuals within the United States who are undocumented, *see, e.g.*, 8 U.S.C.A. § 1225, this Order uses the term "noncitizen." *See Patel v. Garland*, 596 U.S. 328 (2022) (Barrett, J.); *United States v. Palomar-Santiago*, 593 U.S. 321 (2021) (Sotomayor, J.); *Barton v. Barr*, 590 U.S. 222, 226 n.2, (2020) (Kavanaugh, J.) ("This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" (citing 8 U.S.C. § 1101(a)(3))). For purposes of interpretation, these terms should be considered interchangeable as used in this opinion and the accompanying order.

*Alberto v. AG United States*, 859 F.3d 208, 211 (3d Cir. 2017) ("The Fifth Amendment protects the liberty of all persons within our borders, including [noncitizens] in immigration proceedings who are entitled to due process of law . . . .").

**DISCUSSION**

In the Petition, Mr. Nasimov argues that his detainment violates his Fifth Amendment right to due process under the Constitution of the United States because the Government failed to conduct an individualized assessment to determine if he was eligible for release on bond, *i.e.* a bond hearing. (ECF 1 at ¶¶ 57-60). Mr. Nasimov further argues that the Government violated the INA as he should be subject to the detention provisions of 8 U.S.C. § 1226(a) (hereinafter, "Section 1226(a)"), and his detention pursuant to the distinctive provision of 8 U.S.C. § 1225(b)(2) (hereinafter, "Section 1225(b)(2)") is unlawful. (ECF 1 at ¶¶ 50-56). As such, Mr. Nasimov seeks immediate release or, at a minimum, a determination that his detention is pursuant to Section 1226(a) and an order that he receive a bond hearing, and the Government not move him outside of the Eastern District of Pennsylvania while the Petition is pending.

### *Jurisdiction Properly Lies in this Federal Court*

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). However, among that jurisdiction is the authority to review *habeas* petitions. 28 U.S.C. § 2241; *see also Walker*, 312 U.S. at 286.

Here, the Government argues that this Court's review of the instant Petition is jurisdictionally barred pursuant to the following provisions of the INA; *to wit*: 8 U.S.C. §§ 1252(g), 1252(b)(1), and 1252(a). (ECF 4 at pp. 5-7). While the United States Court of Appeals for the Third Circuit ("Third Circuit") has recognized that "[t]he INA limits judicial review in several ways," *E.O.H.C. v. Sec'y United States Dep't of Homeland Sec.*, 950 F.3d 177, 184 (3d Cir. 2020),

it applies a narrow construction to jurisdiction-stripping provisions, *Novo Nordisk Inc. v. Sec'y United States HHS*, 154 F.4th 105, 111 (3d Cir. 2025). However, none of the INA provisions invoked by the Government "strip[ ] the Court's jurisdiction to determine the statutory basis for . . . detention or to assess whether [Petitioner's] continued detention without a bond hearing violates [Petitioner's] constitutional rights." *Kashranov v. Jamison*, 2025 WL 3188399, at \*3 (E.D. Pa. Nov. 14, 2025).

### *Mr. Nasimov does not Need to Exhaust his Claims*

A threshold inquiry for a *habeas corpus* petition is whether the petitioner fully exhausted his claims. *Picard v. Connor*, 404 U.S. 270, 275 (1971). Petitioners seeking *habeas* review pursuant to § 2241 "are ordinarily required to exhaust their administrative remedies[.]" *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). Exceptions exist, however. Petitioners "need not exhaust administrative remedies where the issue presented involves only statutory construction." *Vasquez v. Strada*, 684 F.3d 431, 433-34 (3d Cir. 2012) (*citing Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir.1981)). Additionally, "where exhaustion is not clearly mandated by statute, a futility exception exists." *Duvall v. Elwood*, 336 F.3d 228, 234 (3d Cir. 2003). Here, both exceptions apply.

Here, there are no applicable statutory exhaustion requirements related to Mr. Nasimov's Petition. Indeed, the issue in this case hinges on the statutory construction of Sections 1225 and 1226 of the INA. Any effort by Mr. Nasimov to exhaust administrative remedies through an IJ and the Board of Immigration Appeals ("BIA") would be futile when considering the BIA's decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 225 (BIA 2025) is binding on all immigration court proceedings and precludes an administrative remedy. Moreover, the BIA does not have jurisdiction to adjudicate constitutional issues. *Qatani v. Att'y Gen.*, 144 F.4th 485, 500 (3d Cir. 2025). Petitioner raises a substantial constitutional question and, therefore, this matter is

properly before this Court.  Thus, this Court may review Mr. Nasimov's *habeas* Petition on its

merits.

### *Mr. Nasimov is Entitled to Habeas Relief*

Mr. Nasimov argues that his constitutional rights were violated when he was detained

because he was denied due process in the form of a bond hearing.  (ECF 1 at ¶¶ 57-60).  He also

argues that he is being unlawfully detained without a bond hearing in violation of Section 1226(a).

(*Id.* at ¶¶ 50-56).  In its response, the Government, relying on the BIA's interpretation of "seeking

admission" under Sections 1225(b)(2) and *Hurtado*, 29 I. & N. Dec. at 221, counters that Mr.

Nasimov is subject to the mandatory detention provision of Section 1225(b)(2), and, as such, his

detention without a bond hearing is lawful both under the INA and the Constitution.  (ECF 4 at pp.

10-16).  The Government is mistaken and its reliance on *Hurtado* to justify the lawfulness of its

detention of Mr. Nasimov without a bond hearing is misplaced.  This Court, like nearly every court

in this country to consider the issue, finds the BIA's interpretation of the statute to be incorrect.

(*See* ECF 1 at ¶¶ 32-34) (listing cases); (*see also* ECF 4 at pp. 1-2) (the Government

acknowledging that "more than 50" courts "have rejected the Government's position). [8]

Further, Congress wrote the INA statute differentiating between noncitizens who are newly

seeking entry into the United States and those, like Mr. Nasimov, who have been in this country

for an extended period.  The former category may be subject to mandatory detention, the latter a

discretionary one.  Here, this Court adheres to the Constitution and the statute, as written.  As

noted, Mr. Nasimov has been in the United States since 2023.  He falls within the Section 1226 (a)

---

[8]    The United States Supreme Court has made unequivocal that this Court (like every court) need not defer to the BIA's interpretation of Section 1225(b)(2).  *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400-01 (2024) (noting that "agencies have no special competence in resolving statutory ambiguities" but "[c]ourts do").

category of noncitizens.  Mr. Nasimov is being detained according to a mandatory detention

provision of Section 1225 (b)(2) that does not apply to him.  *See infra*.  As such, his detention is

without due process, is unlawful under the INA, and constitutes a constitutional violation under

the Due Process Clause of the United States Constitution.

*Section 1225(b) Does Not Apply*

The United States Supreme Court ("Supreme Court") has identified a distinction between

Sections 1225(b) and 1226(a):  "U.S. immigration law authorizes the Government to detain <u>certain</u>

*[noncitizen] seeking admission into the country* under [Sections] 1225(b)(1) and (b)(2).  It also

authorizes the Government to *detain certain [noncitizen] already in the country* pending the

outcome of removal proceedings under [Sections] 1226(a) and (c)."  *Jennings v. Rodriguez*, 583

U.S. 281, 289 (2018) (emphasis added). [9]  However, the Supreme Court has not defined what

"seeking admission" means, thus requiring lower courts to conduct an independent statutory

interpretative inquiry.  *See Panzarella v. Navient Solutions, Inc.*, 37 F,4th 867, 872 (3d Cir. 2022)

(citing *Bostock v. Clayton Cnty*., 590 U.S. 644, 654 (2020) ("For an undefined term . . . we seek

to determine its plain meaning at the time of the [statute's] enactment.").

Section 1225(b)(2) provides that:  "[I]n the case of a [noncitizen] who is an *applicant for*

*admission*, if the examining immigration officer determines that a[ noncitizen] *seeking admission*

is not clearly and beyond a doubt entitled to be admitted, *the [noncitizen] shall be detained* for a

proceeding under section 1229a of this title."  8 U.S.C. § 1225(b)(2)(A) (emphasis added).  Under

this statutory language, an "applicant for admission" is subject to Section 1225(b) if they are found

---

[9]      *See also Dep't of Homeland Security v. Thuraissigiam*, explaining that Congress expressly
differentiated in INA between the process due to persons who have "not been physically present in the
United States continuously for the 2-year period immediately prior to the date of the determination of
inadmissibility" and those who have been so present.  591 U.S. 130, 108-09 (2020).

to be "seeking admission." *See also Jennings*, 583 U.S. at 297 (emphasis added) ("[Section] 1225(b) applies primarily to [noncitizens] *seeking entry* into the United States.").

The statute defines "an applicant for admission" as a "[noncitizen] present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). The statute also defines "admitted" and "admission" as "the lawful entry of the [noncitizen] into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). However, the INA does not define the phrase "seeking admission." *See generally*, 8 U.S.C. § 1101. This Court agrees with the Honorable Joshua D. Wolson's well-reasoned analysis of the plain meaning of the text, statutory context, and legislative history of Section 1225(b) to define "seeking admission" to mean "physically attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization." *See Kashranov*, 2025 WL 3188399, at *6-7.

The Government argues that Mr. Nasimov's detention is lawful pursuant to Section 1225(b)(2) is unavailing because Mr. Nasimov, who alleged he arrived in the United States in February 2023, ( a contention not disputed) is not subject to said provision. Mr. Nasimov sought admission when he arrived at the border between the United States and Mexico more than two years before his arrest in December 2025. The Government detained him and released him on an Order of Release on Recognizance shortly after his arrival. Since that time, he has been living, apparently without criminal incident, openly in the United States. Further, Mr. Nasimov has dutifully reported to the ICE office — where he was arrested — at a routine check-in with the Government. In the past two plus years while Mr. Nasimov has been living peaceably in the United States, he has not been "seeking admission" and, thus, he is not subject to Section 1225(b)(2).

*Violation of Section 1226(a)*

Having determined that Mr. Nasimov cannot be subject to mandatory detention under Section 1225(b), this Court next considers the lawful basis, if any, for Mr. Nasimov's detention. As noted, Section 1226(a) "applies to [noncitizens] already present in the United States." *Jennings*, 583 U.S. at 303.  Section 1226(a) provides discretionary authority to arrest and detain a noncitizen "pending a decision on whether [they are] to be removed from the United States."  8 U.S.C. § 1226(a).  Furthermore:

> *[Noncitizens] who are arrested and detained may generally apply for release on bond or conditional parole*. [8 U.S.C.] §1226(a)(2).  To secure release, the [noncitizen] must show that he does not pose a danger to the community and that he is likely to appear for future proceedings.  8 CFR §§ 236.1(c)(8), 1236.1(c)(8) (2020); *In re Adeniji*, 22 I. & N. Dec. 1102, 1113 (BIA 1999).  If DHS denies the [noncitizen]'s request, the [noncitizen] may request a bond hearing in front of an [IJ] by filing an application for a change in the [noncitizen]'s detention conditions. *See* 8 CFR §§ 236.1(d)(1), 1003.19(a), 1236.1(d)(1).

*Johnson v. Guzman Chavez*, 594 U.S. 523, 527-28 (2021) (footnote omitted) (emphasis added).

Here, it is apparent to this Court that Section 1226(a) applies to Mr. Nasimov's circumstance given that he has been in this country for more than two years.  Therefore, under Section 1226(a), he is entitled to a bond hearing upon request.  Because the Government justifies its detention of Mr. Nasimov's under Section 1225(b)(2) and represents to the Court that he is not eligible for a bond hearing, Mr. Nasimov's detention violates the laws of the United States.

*Violation of Due Process*

In addition to being unlawful, this Court also finds Mr. Nasimov's detention unconstitutional.  "[The] Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  To determine whether Mr. Nasimov, who is a person

9

within the United States, has been denied due process, this Court applies the *Mathews v. Eldridge*

balancing test and weighs the following factors:

> First, the private interest that will be affected by the official action; second, the risk
> of an erroneous deprivation of such interest through the procedures used, the
> probable value, if any, of additional or substitute procedural safeguards; and finally,
> the Government's interest, including the function involved and the fiscal and
> administrative burdens that the additional or substitute procedural requirement
> would entail.

424 U.S. 319, 335 (1976).

As for the *Mathews* private interest factor, Mr. Nasimov's freedom, is paramount here.  A

person's interest in freedom from physical detention is "the most elemental of liberty interests."

*Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).  "Freedom from imprisonment — from government

custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the

Due Process] Clause protects."  *Zadvydas*, 533 U.S. at 695 (citing *Foucha v. Louisiana*, 504 U.S.

71, 80 (1992)).  Thus, the first factor of private interest weighs heavily in Mr. Nasimov's favor.

The second *Mathews* factor — the risk of an erroneous deprivation of Mr. Nasimov's rights

— also weighs in his favor.  Based upon the current record, the Government has detained Mr.

Nasimov without any individualized determination[10] whatsoever, and it is unclear what the

Government intends as to the length of Mr. Nasimov's detainment.  This Court will not

---

[10]    "To determine whether a[ noncitizen] is a danger to the community or a risk of flight, an IJ weighs
nine factors under BIA precedent." *Martinez v. Clark*, 124 F.4th 775, 786 (9th Cir. 2024) (citing *In re
Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)).  "These factors may include any or all of the following:  (1)
whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence
in the United States; (3) the [noncitizen]'s family ties in the United States, and whether they may entitle the
[noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment
history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including
the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7)
the [noncitizen]'s history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution
or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United States."
Guerra, 24 I. & N. Dec. at 40 (citing *Matter of Saelee*, 22 I. & N. Dec. 1258 (BIA 2000)).

countenance a situation in which Mr. Nasimov could be subject to months of detention prior to any opportunity to be heard.

Finally, as to the Government's interest, the Court finds that it does not supersede the deprivation of Mr. Nasimov's liberty interest. Although "control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature," *Landon v. Plasencia*, 459 U.S. 21, 34 (1982), a bond hearing would not impose additional administrative burdens on the Government's interests as Section 1226(a) already allows Mr. Nasimov to apply for release on bond, *see Johnson*, 594 U.S. at 527.

In sum, because the *Mathews* factors weigh heavily in Mr. Nasimov's favor, his detention violates his due process rights under the Constitution's Fifth Amendment and is unconstitutional.

**CONCLUSION**

Because the Government's mandatory detention of Mr. Nasimov under Section 1225(b)(2) is "in violation of the Constitution and/or laws or treaties of the United States," *habeas* relief is warranted. 28 U.S.C. § 2241(c)(1), (3). As a general matter, a *habeas* court has "the power to order the conditional release of an individual unlawfully detained — though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008). Accordingly, this Court finds that Mr. Nasimov is to be provided a bond hearing within five days from the date of the Court's Order. Failure to provide the bond hearing as indicated will result in Mr. Nasimov's immediate release. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.